McNULTY, Chief Judge.
In this action on an assignment brought by Fidelity American Financial Corp. (Fidelity) against appellant bank, the bank appeals an adverse judgment.
The facts are these. Continental Mortgage Company (Continental) was a depositor of appellant bank, and, additionally, entered into a servicing agreement with the bank under which the bank, for a fee, would act as collecting agent in the servicing of some 126 mortgages owned by Continental. Some time later Continental discounted certain of these mortgages to ap-pellee Fidelity under a loan agreement which contained the following provision:
“Subject to section 8.08 hereof, Borrower [Continental] or Borrower’s servicing agent, if approved by Lender [Fidelity], shall collect all sums payable on the Mortgages pledged under this Agreement and shall deposit said collections at least once each week in a trusteed account in a Bank designated by Lender and over which Lender shall have the sole power of withdrawal.”
Fidelity now contends that under the authority of this provision it properly notified the bank of its arrangements with Continental and upon the bank’s default in the premises this action ensued.
The primary evidence used by both parties to establish the events which occurred during the critical time period involved herein consists of a series of letters exchanged between the parties. In capsulat-ed form these letters are as follows:
February 21, 1962 — Fidelity sent the bank a letter and an executed signature card and corporate resolution plus sample check. The letter, however, is very brief and merely states that the signature card and resolution are enclosed, that cancelled checks should be forwarded to Fidelity and gives the address to which the new checks and deposit slips were to be sent. The letter does not mention the word mortgages, did not contain any deposit if Fidelity sought to open a new account, nor did it designate a transferral of any funds from any existing account in Continental’s name.
October 3, 1962 — Fidelity wrote the bank to inquire about the account since they had not received any cancelled checks or statements concerning the account it apparently thought had been opened.
*267 October 8, 1962 — Continental wrote the bank and told them not to be concerned about Fidelity since Continental had paid off its obligation under the loan agreement with Fidelity.
October 16, 1962 — The bank wrote Fidelity stating that no account had been established since it never received an okay from Continental. It is also suggested that Fidelity contact Continental to clear up the problem. This same recommendation was reiterated in a letter dated December 28, 1962, from the bank to Fidelity.
January 14, 1963 — Continental gave the bank permission to change its account to a Trustee Account for the benefit of Fidelity.
January 18, 1963 — Fidelity contacted the bank and requested that change be made as soon as possible.
January 29, 1963 — The bank wrote Continental to confirm the specific mortgages which were to form the new Trustee Account. Continental apparently responded and the appropriate account was apparently established.
Because of a default on the part of Continental occurring sometime during the period covered by these letters, Fidelity instituted this action seeking an accounting from the bank. The sole theory upon which Fidelity bases its claim is that since allegedly it sufficiently notified the bank of its agreement with and assignment from Continental, the bank was under a legal duty to make reasonable inquiry as between Fidelity and Continental to determine Fidelity’s rights against the bank under that agreement. The trial court determined that there was such a legal duty and Fidelity prevailed on its theory. We disagree.
The key to the solution hereof is an analysis of the relationships between the parties involved. The central focus is on the bank and its duty to either Continental or Fidelity or both. As to Continental the bank was in two relationships. First of all, it was Continental’s agent when servicing Continental’s mortgages; secondly, it was Continental’s debtor as to the latter’s depository account therein.
As to Fidelity, the aforementioned letter of February 21, 1962 is the sole basis upon which Fidelity can rely to predicate its theory that a relationship was created with the bank giving rise to a duty on the part of the bank, and that sufficient authority had been given the bank to depart from the initial instructions from Continental. We cannot agree that that letter is sufficient for such purposes. No relationship between the bank and Fidelity was created thereby; and in support of this conclusion we need only allude to the deficiencies in that letter set forth above in its encapsulated form. As to constituting notice, if anything it gave rise only to the duty on the part of the bank to make inquiry of its own principal, Continental, which indeed the evidence reflects it did. Thereafter, pursuant to instructions from Continental, the bank had no further contact with Fidelity until the series of events occurred indicated by the letters dated on and after January 14, 1963, as aforesaid. But as to this latter time frame, there is no dispute; and the accounting sought herein involves matters theretofore occurring. Withal the bank was within its rights in the premises and violated no legal duty owed to Fidelity.
In view whereof, the judgment appealed from should be, and it is hereby, reversed.
BOARDMAN and GRIMES, JJ., concur.